UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMIE N. KLAPAT,<br><br>           Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>           Defendant. | CIVIL ACTION NO. 3:21-CV-01301<br><br>(MEHALCHICK, M.J.) |

**MEMORANDUM**

This is an action brought under Section 1383(c) of the Social Security Act and 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security (hereinafter, "the Commissioner") denying Plaintiff Jamie N. Klapat ("Klapat")'s claims for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act. (Doc. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 11). For the reasons expressed herein, and upon detailed consideration of the arguments raised by the parties in their respective briefs, the Commissioner's decision shall be affirmed.

I. **BACKGROUND AND PROCEDURAL HISTORY**

On March 1, 2016, Plaintiff Klapat protectively filed a Title II application for a period of DIB benefits. (Doc. 13-6, at 2). Klapat also protectively filed a Title XVI application for SSI benefits on January 30, 2016. (Doc. 13-6, at 2). In both applications, Klapat alleged disability beginning January 31, 2015. (Doc. 13-6, at 2). The Social Security Administration

initially denied Klapat's applications on April 11, 2016, prompting Klapat's request for a hearing, which Administrative Law Judge ("ALJ") Michelle Wolfe held on December 12, 2017. (Doc. 13-2, at 96). In a written opinion dated March 14, 2018, the ALJ determined that Klapat was not disabled and therefore not entitled to the benefits sought. (Doc. 13-3, at 22). Klapat subsequently filed an appeal, which the Appeals Council granted on November 4, 2019, vacating the hearing decision and remanding the case to a different ALJ.[1] (Doc. 13-3, at 45).

In the remand order, Appeals Counsel directed ALJ Frank Barletta to "[o]btain updated additional evidence concerning [Klapat]'s physical and mental impairments in order to complete the administrative record. . . ." (Doc. 13-3, at 49). Further, ALJ Barletta was directed to "evaluate [Klapat]'s mental impairments in accordance with the special technique in 20 CFR 404.1520a and 416.920a, documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 CFR 404.1520a(c) and 416.920a(c)." (Doc. 13-3, at 49). ALJ Barletta was also directed to "[g]ive further consideration to [Klapat']s maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations." (Doc. 13-3, at 49). Lastly, the remand order noted that if warranted by the expanded record, ALJ Barletta should "obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on [Klapat]'s occupational

---

[1] ALJ Barletta noted that the challenge Klapat raised under the Appointments Clause of the Constitution, U.S. Art. II, § 2, cl. 2, to the manner in which the ALJ was appointed, is cured by this remand because, on July 16, 2018, the Acting Commissioner of Social Security, Kilolo Kijakazi, ratified all ALJ appointments and approved them as her own under the Constitution. (Doc. 13-2, at 12).

base." (Doc. 13-3, at 49). On August 7, 2020, ALJ Barletta held a hearing. (Doc. 13-2, at 44). In a written opinion dated October 23, 2020, the ALJ determined that Klapat was not disabled and therefore not entitled to the benefits sought. (Doc. 13-2, at 8). On May 9, 2021, the Appeals Council denied Klapat's request for review. (Doc. 13-2, at 2).

On July 23, 2021, Klapat filed the instant action. (Doc. 1). The Commissioner responded on October 29, 2021, providing the requisite transcripts from the disability proceedings. (Doc. 12; Doc. 13). The parties then filed their respective briefs, with Klapat alleging one error warranted reversal or remand. (Doc. 18; Doc. 19; Doc. 20).

II. **STANDARD OF REVIEW**

In order to receive benefits under Title II or Title XVI of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To satisfy this requirement, a claimant must have a severe physical or mental impairment[2] that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a). Additionally, to be eligible to receive benefits under Title II of the Social Security Act, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131.

---

[2] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

A. ADMINISTRATIVE REVIEW

In evaluating whether a claimant is disabled as defined in the Social Security Act, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment;[3] (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC"); and (5) whether the claimant is able to do any other work that exists in significant numbers in the national economy, considering his or her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 20 C.F.R. § 404.1512(a); 20 C.F.R. § 416.912(a). Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. § 404.1512(f); 20 C.F.R. § 416.912(f).

B. JUDICIAL REVIEW

In reviewing the Commissioner's final decision denying a claimant's application for benefits, the Court's review is limited to determining whether the findings of the final decision-

---

[3] An extensive list of impairments that warrant a finding of disability based solely on medical criteria, without considering vocational criteria, is set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1 (effective June 12, 2015, through July 19, 2015).

maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g) by reference); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, however, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The question before the Court, therefore, is not whether Klapat is disabled, but whether the Commissioner's finding that Klapat is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*,

900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues decided by the Commissioner.").

### III. THE ALJ'S DECISION

In a decision dated October 23, 2020, the ALJ determined Klapat "has not been under a disability, as defined in the Social Security Act, from January 31, 2015, through the date of this decision." (Doc. 13-2, at 26). The ALJ reached this conclusion after proceeding through the five-step sequential analysis required by the Social Security Act. *See* 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). The ALJ determined that Klapat met the insured status requirements of the Social Security Act through December 31, 2019. (Doc. 13-2, at 14).

#### A. STEP ONE

At step one, an ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R § 404.1520(a)(4)(i); 20 C.F.R. § 416.920(a)(4)(i). If a claimant is engaging in SGA, the Regulations deem them not disabled, regardless of age, education, or work experience. 20 C.F.R. § 404.1520(b); 20 C.F.R. § 416.920(b). SGA is defined as work activity—requiring significant physical or mental activity—resulting in pay or profit. 20 C.F.R. § 404.1572; 20 C.F.R. § 416.972. In making this determination, the ALJ must consider only the earnings of the claimant. 20 C.F.R. § 404.1574; 20 C.F.R. § 416.974. Here, the ALJ determined Klapat "has not engaged in [SGA] since January 31, 2015, the alleged onset date." (Doc. 13-2, at 14). Thus, the ALJ's analysis proceeded to step two.

#### B. STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe.

C.F.R. § 404.1520(a)(4)(ii); 20 C.F.R. § 416.920(a)(4)(ii). If the ALJ determines that a claimant does not have an "impairment or combination of impairments which significantly limits [their] physical or mental ability to do basic work activities, [the ALJ] will find that [the claimant] does not have a severe impairment and [is], therefore not disabled." 20 C.F.R. § 1520(c); 20 C.F.R. § 416.920(c). If a claimant establishes a severe impairment or combination of impairments, the analysis continues to the third step. Here, the ALJ found that the medical evidence of record established the presence of the following medically determinable severe impairments: "ventral hernia status post hernia repairs, status post sigmoidectomy, generalized osteoarthritis, chronic pain syndrome, neuropathy, obesity, cervical degenerative disc disease, fibromyalgia, and major depressive disorder." (Doc. 13-2, at 14). The ALJ also noted non-severe impairments of: hypothyroidism, iatrogenic hyperthyroidism, Guillain-Barre syndrome, gastroesophageal reflux disease ("GERD"), trochanteric bursitis, coccyx fracture, left elbow contusion, allergic rhinitis, maxillary sinusitis, bronchitis, bronchospasm, obstructive sleep apnea, tobacco use disorder, serotonin withdrawal syndrome, abnormal pannus, chronic panniculitis, status post reduction mammoplasty, sprain of right wrist, right ankle injury, Raynaud's phenomenon, trapezius muscle spasm, vitamin D insufficiency, skin lesions, chronic constipation, bladder prolapse, stress incontinence, contact dermatitis, hyperglycemia, and laryngopharyngeal reflux. (Doc. 13-2, at 14).

    C. STEP THREE

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. § Pt. 404, Subpt. P, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. §§ 404.1520(a)(4)(iii); 404.1525; 404.1526; 20 C.F.R. §§ 416.920(a)(4)(iii); 416.925;

416.926. The sections in this appendix are commonly referred to as "listings." If the ALJ determines that the claimant's impairments meet these listings, then the claimant is considered disabled. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 416.920(d). Otherwise, the ALJ must proceed to the fourth step of the analysis. The ALJ determined that none of Klapat's impairments, considered individually or in combination, met or equaled a Listing. (Doc. 13-2, at 15). Specifically, the ALJ considered Listings 1.02 (major dysfunction of a joint); 1.04 (disorders of the spine); 11.14 (peripheral neuropathy); and 12.04 (depressive, bipolar and related disorders). (Doc. 15-17). In addition, the ALJ considered Social Security Administration Rulings 12-2p (evaluation of fibromyalgia) and 19-2p (evaluating cases involving obesity). (Doc. 13-2, at 16).

### D. RESIDUAL FUNCTIONAL CAPACITY

Between steps three and four, the ALJ determines the claimant's residual functional capacity ("RFC"), crafted upon consideration of the medical evidence provided. Klapat alleged that she is limited in her ability to do work due to anxiety, depression, thyroid removal, heartburn and acid reflux, osteoarthritis, Guillain Barre syndrome, ruptured colon, hernia surgery, gallbladder removal, deviated septum repaired, tonsils removed, breast reduction due to back problems, and broken tailbone. (Doc. 13-2, at 18). The ALJ found that while Klapat's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Klapat's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Doc. 13-2, at 18). The ALJ then went on to detail Klapat's medical records and treatment history. (Doc. 13-2, at 18-24).

Considering all evidence in the record, the ALJ determined that Klapat had the RFC "to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)," subject to the following non-exertional limitations:

> [Klapat] can occasionally climb ramps and stairs. She can never climb ladders, ropes or scaffolds. [Klapat] can occasionally balance, stoop, kneel, crouch and crawl. [Klapat] can occasionally push/pull with the bilateral lower extremities. She must avoid concentrated exposure to vibrations and hazards. She would be limited to unskilled work, involving only simple, routine tasks that are not performed in a fast-paced production environment. She is limited to occupations with only occasional, simple decision-making and occasional changes in work duties or work setting.

(Doc. 13-2, at 17-18).

E. STEP FOUR

Having assessed a claimant's RFC, at step four the ALJ must determine whether the claimant had, during the relevant period, the RFC to perform the requirements of their past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv); 20 C.F.R. § 416.920(a)(4)(iv). A finding that the claimant can still perform past relevant work requires a determination that the claimant is not disabled. . 20 C.F.R. § 404.1520(a)(4)(iv); 20 C.F.R. § 416.920(a)(4)(iv). Past relevant work is defined as work the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b); 20 C.F.R. § 416.960(b). If the claimant cannot perform past relevant work or has no past relevant work, then the analysis proceeds to the fifth step. 20 C.F.R. § 404.1565; 20 C.F.R. § 416.965. The ALJ considers whether the claimant retains the capacity to perform the particular functional demands and job duties of the past relevant work, either as the claimant actually performed the work or as ordinarily required by employers throughout the national economy. *Garibay v. Comm'r Of Soc. Sec.*, 336 F. App'x 152, 158 (3d Cir. 2009)

(quoting SSR 82-6). "If the claimant can perform his [or her] past relevant work despite his [or her] limitations, he [or she] is not disabled." *Hess*, 931 F.3d at 202 (citing 20 C.F.R. § 404.1520(a)(4)(iv)).

Here, the ALJ determined that Klapat is unable to perform past relevant work. (Doc. 13-2, at 24). The ALJ noted past relevant work as a compost job consisting of billing collections clerk and clerical collections clerk, but the exertional requirements of each exceeded Klapat's RFC. (Doc. 13-2, at 24). Thus, the ALJ proceeded to step five of the sequential analysis.

### F. STEP FIVE

At step five of the sequential analysis process, an ALJ considers the claimant's age, education, and work experience to see if a claimant can make the adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v); 20 C.F.R. § 416.920(a)(4)(v). These factors are not considered when evaluating a claimant's ability to perform past relevant work. 20 C.F.R. § 404.1560(b)(3); 20 C.F.R. § 416.960(b)(3). If a claimant has the ability to make an adjustment to other work, they will not be considered disabled. 20 C.F.R. § 404.1520(a)(4)(v); 20 C.F.R. § 416.920(a)(4)(v). Here, the ALJ made vocational determinations that Klapat was 43 years old on the alleged onset date, defined as a younger individual age 45-49 by the Regulations. 20 C.F.R. § 416.963. (Doc. 13-2. At 24). The ALJ also noted that Klapat "has at least a high school education" as considered in 20 C.F.R. § 416.964. (Doc. 13-2, at 24). The ALJ determined that upon consideration of these factors, Klapat's RFC, and the testimony of a vocational expert ("VE"), "there are jobs that exist in significant numbers in the national economy that the claimant can perform." 20 C.F.R. §§ 404.1569; 404.1569(a); 20 C.F.R. §§ 416.969; 416.969(a). (Doc. 13-2, at 24). The ALJ specifically identified occupations of order

clerk, bench assembler, and lens inserter, which are occupations with open positions ranging from 97,260 to 169,120 nationally and 1,765 to 4,930 in Pennsylvania. (Doc. 13-2, at 25).

The ALJ noted that Klapat submitted a post-hearing memorandum regarding the sufficiency of the VE's testimony, asserting that the methodology of the SkillTRAN System is not public information and the Dictionary of Occupational Titles ("DOT") used by the Bureau of Labor Statistics is not reliable. (Doc. 13-2, at 25). Klapat also argued that the jobs identified by the VE exceed the limitation to simple, routine tasks, and that there is a conflict between the VE testimony and the DOT. (Doc. 13-2, at 25). Further, Klapat asserted that the VE's testimony is not reliable because she identified DOT jobs and gave numbers specific to DOT codes, not Office of Evaluation Sciences ("OES")/Security Operation Center ("SOC") codes. (Doc. 13-2, at 26). Lastly, Klapat argued the VE is not a credible witness because her testimony did not conform to SSR 00-04p, and that the VE's experience is not a reliable, reproducible, scientific methodology. (Doc. 13-2, at 26).

The ALJ overruled these objections, stating that after reviewing the entire case record and considering the VE's testimony, the ALJ "did not find it reasonably necessary for the full presentation of the case to subpoena the [VE] for documentation to support this testimony." (Doc. 13-2, at 26). The ALJ found that "[t]he [VE] was fully qualified to render expert opinions in this case, and she relied on information and material publicly available to [Klapat] and normally relied upon by experts in the field." (Doc. 13-2, at 25). The ALJ noted that the VE based her answers on data provided by the United States Department of Labor, Bureau of Labor Statistics, which is data from a government agency and Social Security Administration regulations require the ALJ to take notice of this reliable job information. (Doc. 13-2, at 26). In addition, the ALJ that there is no conflict between the vocational

expert's testimony and the DOT because "[t]hese occupations are 'unskilled' as set forth in the DOT, and within the [RFC], as opined by the [VE]." (Doc. 13-2, at 25).

As a result of this analysis, the ALJ determined that Klapat was not disabled and denied Klapat's applications for benefits. (Doc. 13-2, at 26).

IV. **DISCUSSION**

Klapat advances one main argument on appeal, asserting that the ALJ erroneously rejected the opinion of treating primary care provider Guillermo Rodriquez, M.D. ("Dr. Rodriquez"). (Doc. 18, at 3, 10; Doc. 20, at 2-3). In addition, Klapat argues that the ALJ's analysis "fails to consider extensive portions of the record detailing the basis for Dr. Rodriquez's opinion, and fails to correctly apply the regulatory criteria for assessment of a treating source opinion." (Doc. 18, at 3). In response, the Commissioner contends that substantial evidence supports the ALJ's decision and that Klapat's contentions with regard to Dr. Rodriguez's opinions are meritless because the ALJ's evaluation of the opinion evidence, including Dr. Rodriquez's opinions, satisfies the "not high" substantial evidence threshold.. (Doc. 19, at 14, 20) (citing *Biestk v. Berryhill*, 139 S. Ct. 1148, 1157 (2019)).

Assessing a claimant's RFC falls within the purview of the ALJ. 20 C.F.R. §§ 404.1546(c), 416.946(c); SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996). "[RFC] is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 (3d Cir. 1999)). Specifically, one's RFC reflects the most that an individual can still do, despite his or her limitations, and is used at steps four and five to evaluate the claimant's case. 20 C.F.R. §§ 404.1520, 404.1545, 416.920, 416.945; SSR 96-8P, 1996 WL 374184 at *2. In crafting the RFC, the ALJ must consider all the evidence of

record, including medical signs and laboratory findings, daily activities, medical source statements, and a claimant's medical history. SSR 96-8p, 1996 WL 374184, at *5; *see also Mullin v. Apfel*, 79 F. Supp. 2d 544, 548 (E.D. Pa. 2000). An ALJ's RFC findings, however, must be supported by the medical evidence. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). "[O]nce the ALJ has made this [RFC] determination, [a court's] review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Black v. Berryhill*, No. 16-1768, 2018 WL 4189661 at *3 (M.D. Pa. Apr. 13, 2018).

In *Cotter v. Harris*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." 642 F.2d 700, 704, 706-707 (3d Cir. 1981). However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See, e.g., Knepp*, 204 F.3d at 83. "There is no requirement that the ALJ discuss in her opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004).

In making the RFC determination, "the ALJ must consider all evidence before him" and "evaluate every medical opinion…receive[d]." *Burnett*, 220 F.3d at 121 (citations omitted); 20 C.F.R. § 404.1527(c); *see also Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) ("The Secretary must 'explicitly' weigh all relevant, probative and available evidence. . . . The Secretary may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she

rejects."). The Social Security Regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including … symptoms, diagnosis and prognosis, what [the claimant] can still do despite [his or her] impairment(s), and … physical or mental restrictions." 20 C.F.R. §404.1527(a)(2). Social Security Ruling ("SSR") 96-5p further clarifies that "opinions from any medical source on issues reserved to the Commissioner must never be ignored," and specifically states that the ALJ's "decision must explain the consideration given to the treating source's opinion(s)."[4] SSR 96-5p, 1996 WL 374183, at *3, *6 (July 2, 1996).

SSR 96-6p addresses the weight afforded to treating medical sources, such as Dr. Rodriquez. SSR 96-6p, 1996 WL 374180 (July 2, 1996).[5] Because treating sources often have the closest ties to a claimant, their opinions are generally entitled to more weight. 20 C.F.R. § 404.1527(c)(2); 20 C.F.R. § 416.927(c)(2). Under certain circumstances, the medical opinion of a treating source may even be entitled to controlling weight. *See* 20 C.F.R. § 404.1527(c)(2); 20 C.F.R. § 416.927(c)(2); *see also* SSR 96-2p, 1996 WL 374188 at *1. A treating physician's opinion warrants controlling weight where the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other

---

[4] SSRs are agency rulings published under the authority of the Commissioner and are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1). SSRs do not have the force and effect of the law or regulations but are to be "relied upon as precedents in determining other cases where the facts are basically the same." *Heckler v. Edwards*, 465 U.S. 870, 873, n.3 (1984).

[5] SSR 96-6p was published and became effective on July 2, 1996. Although since rescinded and replaced by SSR 17-2p, SSR 96-6p was in effect at the time the ALJ rendered his decision that is now before this Court.

substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); 20 C.F.R. § 416.927(c)(2). On the other hand, a treating source's opinion may be rejected "only on the basis of contradictory medical evidence . . . ." *Plummer v. Apfel,* 186 F.3d 422, 429 (3d Cir. 1999). Thus, even if a treating source's medical opinion is not entitled to controlling weight, it still may be entitled to significant deference. SSR 96-2p, 1996 WL 374188 at *4.

Upon establishing that a treating source's opinion is not entitled to controlling weight, an ALJ must weigh the opinion "using all of the factors provided in 20 CFR 404.1527 and 416.927," which are also used for evaluating opinions by non-treating and non-examining medical sources. SSR 96-2p, 1996 WL 374188 at *4. These factors include: (1) the examining relationship; (2) the treatment relationship, including its length and nature; (3) the supportability of the medical source's opinions; (4) consistency; (5) specialization; and (6) other relevant factors. 20 C.F.R. § 404.1527(c); 20 C.F.R. § 416.927(c)(2); *see also* SSR 96-6p, 1996 WL 374180 at *2 ("The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker."). Further, 20 C.F.R. § 404.1527(c)(2) and 20 C.F.R. § 416.927(c)(2) require that the Commissioner "will always give good reasons in [his] notice of determination or decision for the weight [he] gives to [a claimant's] treating source's opinion." *See also Cotter*, 642 F.2d at 704 (Finding the ALJ's articulation of the weight accorded to each medical opinion must be accompanied by "a clear and satisfactory explication of the basis on which it rests."). "Where a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Plummer*, 186 F.3d at 429 (quoting *Mason*, 994 F.2d at 1066); *see also Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). As such, to allow for

meaningful judicial review, it is the duty of the ALJ to explain the rationale for the weight afforded. *Plummer*, 186 F.3d at 429; *Burnett*, 220 F.3d at 119.

On November 13, 2017, Dr. Rodriquez, Klapat's primary care provider, completed a treating medical source statement. (Doc. 13-7, at 315). Dr. Rodriquez opined that Klapat would be off-task more than 25% of the workday, absent from work more than four days per month, and only able to sit four hours, stand one hour, and walk one hour in an eight-hour workday. (Doc. 13-7, at 315-16). Dr. Rodriquez also opined that Klapat could rarely lift and carry ten pounds, never or rarely use her hands, never use foot controls, and would require a sit/stand option at will. (Doc. 13-7, at 316). Further, Dr. Rodriquez noted that Klapat could do any postural movements and could never have exposure to unprotected heights, moving mechanical parts, operating a vehicle, humidity, wetness, dusts, odors, fumes, pulmonary irritants, extreme cold, extreme heat, and vibrations. (Doc. 13-7, at 317-18). Additionally, on December 7, 2017, Dr. Rodriquez completed a physical examination of Klapat completed another treating medical source statement. (Doc. 13-7, at 488). Dr. Rodriquez opined that Klapat could never lift and carry ten pounds, rarely use foot controls, and rarely have exposure to moving mechanical parts, operating a vehicle, humidity, wetness, dusts, odors, fumes, and pulmonary irritants. (Doc. 13-7, at 488-91).

In this case, the Court finds substantial evidence supports the ALJ's RFC determination as it pertains to giving the opinion of Dr. Rodriguez "little weight." (Doc. 13-2, at 23). Acknowledging that Dr. Rodriquez is Klapat's treating physician, the ALJ found that the treatment records do not show limitations to the extent that Dr. Rodriquez opined. (Doc. 13-2, at 23). For example, the ALJ stated that "at an appointment on February 17, 2017, Dr. [Rodriquez] described [Klapat] as 'alert, healthy, no distress, well-nourished and

well developed.'" (Doc. 13-2, at 23). Further, the ALJ explained that at Klapat's appointment with Dr. Rodriquez on February 17, 2017, there was no indication that Klapat suffered from costovertebral angle tenderness, joint deformities, effusion or inflammation, edema, clubbing, or cyanosis. (Doc. 13-2, at 23). The ALJ also noted that "[t]he examination of her back revealed no tenderness to percussion or palpation and no muscle spasm." (Doc. 13-2, at 23). Regarding Dr. Rodriquez's statement from December 7, 2017, the ALJ explained that the opinion "gave similar opinions that [Klapat] cannot do full time work" and "noted only normal findings." (Doc. 13-2, at 23). The ALJ reiterated that "the treatment records do not show limitations to the extent opined in the medical source statement of December 7, 2017." (Doc. 13-2, at 23). Therefore, the ALJ afforded Dr. Rodriguez's opinions only "little weight" in his RFC determination.

The ALJ provided a sufficient explanation as to the weight afforded to the opinions of Dr. Rodriguez and, thus, the ALJ's findings were supported by substantial evidence. (citation omitted). See Fullen v. Comm'r of Soc. Sec., 705 F. Appx. 121, 125 (3d Cir. 2017) ("*Morales v. Apfel* requires that 'the ALJ accord treating physicians' reports great weight,' but there is no requirement to accept those opinions if they are not supported by sufficient evidence in the record*.*"); Faranoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001) (the ALJ is required to "consider and evaluate the [relevant] medical evidence in the record" and, to discuss and weigh this evidence). In making the RFC determination, the ALJ's discussed Klapat's medical evidence, activities of daily living, and opinion evidence from Dr. Rodriquez, Barry J. Pernikoff, M.D., Thomas Fink, Ph.D., and Klapat's mother. (Doc. 13-2, at 22-23). As in other cases where courts have held an ALJ properly discounted a treating doctor's opinions, the ALJ here found discrepancies between Dr. Rodriquez's opinion and other evidence,

including Dr. Rodriquez's prior assessment of Klapat's functionality from February 17, 2017. *See Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 133 (3d Cir. 2017); *Alvarado v. Colvin*, 147 F.Supp.3d 297, 308 (E.D. Pa. 2015) ("If the treating physician's opinion conflicts with other medical evidence, then the ALJ is free to give that opinion less than controlling weight or even reject it, so long as the ALJ explains her reasons and makes a clear record.")

Although Klapat argues that certain evidence of record supports affording greater weight to the opinion of Dr. Rodriguez, "[t]he presence of evidence in the record that supports a contrary conclusion does not undermine the [ALJ's] decision so long as the record provides substantial support for that decision." *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009). After careful consideration of the evidence, including the opinion of Dr. Rodriguez, the ALJ determined that Klapat has the RFC to perform sedentary work and limited her to a reduced range of unskilled, low-stress work. (Doc. 13-2, at 17-18). According to controlling case law, the ALJ is not required to "use particular language or adhere to a particular format." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). The ALJ must only provide enough explanation to his findings to permit meaningful judicial review, which the ALJ has done in this case. *Cotter*, 642 F.2d at 704-05; *see Hur*, 94 F. App'x at 133 ("There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record.").

Accordingly, the Court finds that substantial evidence supports the ALJ's consideration of opinion evidence by Dr. Rodriquez.

V.   **CONCLUSION**

Based on the foregoing, the decision of the Commissioner to deny Klapat's application for benefits is **AFFIRMED**, final judgment is issued in favor of the Commissioner and against Klapat, and the Clerk of Court is directed to **CLOSE** this case.

An appropriate Order follows.


Dated: August 18, 2022                              *s/Karoline Mehalchick*
                                                    **KAROLINE MEHALCHICK**
                                                    **Chief United States Magistrate Judge**